RUDOLPH R. LOENING et al., Constituting the Charter Commission of the City of Glen Cove, Appellants, v. WILLIAM H. SEAMAN, as Mayor of the City of Glen Cove, et al., Respondents.

Argued June 11, 1943; decided June 18, 1943.

528

*Samuel D. Smoleff* for appellants.

*Jacob J. Pincus* for respondents.

LEWIS, J. In this submitted controversy the Appellate Division has ruled that it is not the duty of the defendants — the Mayor, Councilmen and the City Clerk of the City of Glen Cove — to submit to the voters of that city at a special election to be held on June 29, 1943, a proposed new city charter. The case is here on appeal by permission of the Appellate Division granted to the plaintiffs.

On April 29, 1943, the plaintiffs, who are the " duly designated members of the Charter Commission of the City of Glen Cove," filed with the defendant City Clerk a proposed new city charter to replace the present charter adopted on June 8, 1917. Simultaneously the Charter Commission filed with the City Clerk a written communication, signed by each member, which stated in part that —

" * * * in accordance with the terms of the said Local Law [No. 4, for the year 1941] we have designated *Tues-*

*day, June 29, 1943,* as the date of a *special election* for the submission of the said new charter to the voters of the city.

" Will you kindly transmit to the City Council of the City of Glen Cove, our request that the Council make the necessary arrangements with the election officials for the conduct of such a special election and the submission thereat of the question: ' Shall the charter proposed by the Charter Commission be adopted?' as required by section 20 of the City Home Rule Law; also our request that the Council provide for the printing of the charter herewith submitted, make copies available to all interested citizens, and give it such further publicity as it may deem suitable, in accordance with the requirements of the said section." (Emphasis supplied.)

The proposed new charter had been prepared by the Charter Commission created by Local Law No. 4 (1941) of which section 4 authorized the Commission " * * * in accordance with the provisions of subdivision three of section twenty of the City Home Rule Law to prepare a draft of a new charter for the City of Glen Cove *and to provide for its submission to the voters of the city at a special election."* (Emphasis supplied.) It was in accord with that authorization that the Charter Commission, simultaneously with the filing of the proposed new charter, had requested the City Council to make the necessary arrangements for a special election to be held on June 29, 1943, when the proposed new charter could be submitted for approval to the local electorate.

In apparent disregard of such request by the Charter Commission the defendants, according to the agreed facts now before us, " * * * have not taken any steps, and, unless directed by the Court, do not intend to take any steps to cause the proposed charter to be submitted at the said special election designated by the Charter Commission. Defendant City Council, at its next regular meeting held on May 11, 1943, after the filing of the proposed charter with the City Clerk, adopted a resolution in terms as follows:

" ' Resolved that the proposed charter, as submitted by the Charter Commission, be submitted for vote on November 2nd, 1943; and be it further

" ' Resolved that the City Clerk be and she hereby is directed to notify the Board of Elections to place upon the voting machine the question:

" ' " Shall the charter proposed by the Charter Commission be adopted? " and to take any and all necessary steps to submit properly such proposition to the voters.' "

The assertion is made on behalf of the City Council that by disregarding the communication received from the Charter Commission it acted within its legal rights when by formal resolution it designated as the date when the proposed new charter would be submitted to the electors, November 2, 1943, — that being the date of a *general* election. It is said that the Council's authority to make such designation is granted by the City Home Rule Law, section 20, subdivision 3, which provides in part: " * * * Such new charter shall be completed and filed in the office of the city clerk in time for submission to the electors not later than the second general election after the election at which members of the charter commission are elected or, if no members of the commission are chosen by election, after the election at which the commission is authorized. The local legislative body shall provide for such publication or other publicity in respect to the provisions of the proposed charter as it may deem proper, *and for its submission to the electors of the city at a special city election or a general election held not earlier than sixty days after the filing thereof in the office of the city clerk and not later than the next general election which does not occur within the said sixty days,* provided, however, that if such general election occurs within ninety days after the said filing, the proposed charter shall be submitted at such general election. At such election, except as hereinafter provided, there shall be submitted to the qualified electors of the city the question: ' Shall the charter proposed by the charter commission be adopted?' * * *." (Emphasis supplied.)

We do not think that the procedure outlined in section 20, subdivision 3, of the City Home Rule Law, upon which the defendants rely, is exclusive. The Legislature indicated its intention to be otherwise when, by section 31 of the same chapter, it provided: " A permissive procedure authorized by this chapter shall not be deemed to be exclusive or to prohibit the

use of any other procedure authorized by any act of the legislature, city charter or local law lawfully adopted but shall be deemed an alternative thereto."

Local Law No. 4 (1941) was " lawfully adopted " after a petition for its submission to the electorate and its subsequent adoption by popular vote (City Home Rule Law, § 20, subd. 2). It thereby became a " local law " within the definition set forth in section 2 of the City Home Rule Law. The proposal voted upon by the electors was clearly set forth, and the procedure was thereby authorized by which a charter commission, charged with the duty of preparing a new city charter, should " * * * provide for its submission to the voters of the city at a special election." The submission to the voters of the proposal, which later became Local Law No. 4 (1941), as the means of empowering the Charter Commission to perform the duties with which it was charged, had the unanimous approval of the City Council.

No fatal inconsistency is to be found between the Local Law and section 20, subdivision 3, of the City Home Rule Law. The clause in Local Law No. 4, section 4, authorizing the Charter Commission to make provision for the submission of any proposed new charter " to the voters of the city at a *special* election " was a valid delegation of power to the Charter Commission (City Home Rule Law, § 11, subd. 3; cf. L. 1934, ch. 867, § 4; and see *Matter of Mooney* v. *Cohen,* 272 N. Y. 33, 39). The enactment of Local Law No. 4 validly restricted the power theretofore granted to the City Council by City Home Rule Law, section 20, subdivision 3, — which it now claims the right to exercise by fixing the *general* election of November 2, 1943, as the date when the proposed charter shall be submitted for popular vote — and empowered the Charter Commission to provide for the submission of the proposed new charter to popular vote at a *special election.* Such a restriction of the City Council's power, as that power was defined by section 20, subdivision 3, of the City Home Rule Law, is a matter which relates itself to the government and affairs of the City of Glen Cove and is within the field of legislation open to a city under the Home Rule provision of the Constitution (art. IX, § 12) and under the City Home Rule Law adopted by the Legislature to carry out the constitutional mandate. (See *New Rochelle Trust Co.* v. *White,* 283 N. Y. 223, 229, 231; *Bareham* v. *City of Rochester,* 246 N. Y. 140, 146, 147.)

There are substantial reasons why the City Council, which submitted Local Law No. 4 to a popular vote, and the electorate which adopted it, may have preferred a " special election " rather than a general election as the occasion for registering the choice of the electors upon a proposed new charter. We cannot say that the designation in Local Law No. 4, section 4, of a " special election " to determine the electors' approval or disapproval of the Charter Commission's proposal may not have exerted a deciding influence upon the popular vote.

The judgment of the Appellate Division should be reversed, without costs, and judgment granted declaring that it is the duty of the defendants to submit the proposed charter of the City of Glen Cove at a special election to be held on June 29, 1943.

The judgment should be reversed and judgment directed in favor of the plaintiffs without costs.

CONWAY, J. (dissenting). The question presented to us for decision is a simple one. It is whether the local legislative body of a city or a charter commission selected in accordance with the provisions of City Home Rule Law, section 20, subdivision 2, shall determine whether the charter is to be submitted to the electors of the city at a special city election or a general election and which body shall determine, if it be a special city election, the date on which the submission to the electors shall be made. The determination of that question depends in the final analysis upon the construction of the City Home Rule Law, section 31, to which reference will later be made.

The fundamental principles of government applicable here are found in the following quotations from the opinions of this court: " The power to provide for a referendum must be found in the City Home Rule Act (*Mills* v. *Sweeney,* 219 N. Y. 213). Otherwise it is unauthorized. Direct legislation in cities must always rest on some constitutional or statutory grant of power. *Government by representation is still the rule.* Direct action by the people is the exception. The test of validity, therefore, is whether Local Law No. 16 has been adopted as a local law coming within the powers delegated to the city by such law. The power asserted by the city must fail unless the

local law squares itself with the restrictions therein contained. (*Browne* v. *City of New York,* 241 N. Y. 96.) '' (*Matter of McCabe* v. *Voorhis,* 243 N. Y. 401, 413.)

'' The legislative power of the State is vested in the Senate and Assembly (State Const. Art. III, § 1). *It may not delegate that authority to any other legislative body or to the electors except where the Constitution authorizes such delegation.* Even then it may delegate legislative power only in manner and form permitted by the Constitution.

'' ' Direct legislation in cities must always rest on some constitutional or statutory grant of power. Government by representation is still the rule. Direct action by the people is the exception ' (*Matter of McCabe* v. *Voorhis,* 243 N. Y. 401, 413) * * * The Constitution of the State does not provide in the Home Rule Amendment or the County Reform Amendment how a local law shall be enacted. It placed upon the Legislature the duty of determining how local laws may be enacted. * * * The test of the validity of a local law is whether, within the field of legislation delegated to the city, it has been enacted in accordance with the provisions of the statute.'' (*Burke* v. *Kern,* 287 N. Y. 203, 211.)

The Legislature has defined a local law in City Home Rule Law, section 2. It has provided in section 20, subdivision 2, that a local law for the creation of a commission to draft a new city charter may be adopted upon the petition of a specified number of qualified electors of a city and the affirmative vote of a majority of the qualified electors of such city voting thereon. The grant of power to the electors to act by petition and referendum in the adoption of such local law is a limited one. The petition is to be '' for the creation of a commission to draft a new city charter * * *.'' The proposed local law '' shall .fix or provide the method of determining the number of members of such commission and shall either name such members or provide for the election or appointment of such members, or the election of some and the appointment of others.'' (City Home Rule Law, § 20, subd. 2.) The qualified electors have no power under that grant to determine whether the charter shall be voted upon at a special city election or a general city election nor have they the power to determine the date upon which a special city election shall be had.

In the same section (§ 20) in subdivision 3 the Legislature has provided " the local legislative body shall provide for such publication or other publicity in respect to the provisions of the proposed charter as it may deem proper, *and for its submission to the electors of the city at a special city election or a general election * * *."*

The legislative plan is plain. The electors may determine whether there shall be a commission to draft a new city charter and may select the personnel of the commission. Representative government as embodied in the local Legislature must determine whether the charter shall be voted on at a special or general election. The electors are powerless to write into the petition a proposal that there be a special election and that the charter commission to be selected determine the time of that election and an attempt so to do is a nullity.

The wisdom of the Legislature in this instance is evidenced by the fact that the petition was filed and the Local Law adopted when we were not at war. At that time good judgment might have dictated the holding of a special election at which to adopt or reject the proposed charter. Today we are at war. Service men, of whom it is claimed there are one-tenth of the total population of the city, may vote only at a general election. Large numbers of the residents of Glen Cove are employed in defense activities in airplane factories at Bethpage, Farmingdale, Port Washington and other places throughout the country, many returning home infrequently. There may be absentee voting only at a general election. The Election Law provides for a two hour period for working people to vote while the polls are open at a general election. Here the local legislative body, to whom the decision of this question has been confided, has apparently determined that the proposed charter shall be voted on at a general election rather than a special election to be held on June 29th. It seems to us their authority is supreme.

In City Home Rule Law, section 30, entitled " Legislative intent " it is provided: " It is not the intention of the Legislature hereby to abolish or curtail any powers or rights heretofore conferred upon or delegated to a city or cities or to any board, body or officer thereof, unless a contrary intention is clearly manifest from the express provisions of this chapter or by necessary intendment therefrom; * * *." There is

here no express provision at all so it cannot be urged that a nonexistent express provision makes anything clearly manifest or has any necessary intendment.

Concededly if the appellants are to find any justification for their position it must be found in the following sentence of City Home Rule Law, section 31: " A permissive procedure authorized by this chapter shall not be deemed to be exclusive or to prohibit the use of any other procedure authorized by any act of the legislature, city charter or local law *lawfully adopted* but shall be deemed an alternative thereto." Even assuming that Local Law No. 4, subdivision 4, was lawfully adopted, and we have shown under the authorities and the statute (*supra*) that there was no power in the electors to adopt it, nevertheless this section 31 is of no assistance to appellants. It was mandatory upon the local legislative body to submit the proposed charter to the electors. (City Home Rule Law, § 20, subd. 3, *supra*.) There was nothing permissive about that requirement. The charter could be adopted in no other way and permission was not granted to any group or body other than the local legislative one to submit the proposed charter to the electors or to determine whether the submission was to be at a special or general city election. The City Home Rule Law contains no such permissive alternative.

The Constitution and the Legislature determine the plan of government under which we live. Courts should preserve that plan and let changes therein come from the people or the Legislature.

The local legislative body on the submission of this controversy under sections 546-548 of the Civil Practice Act has asked for an answer to the following question: " Is it the duty of the defendants [City Council and City Clerk] to submit the proposed city charter to the voters of the City of Glen Cove at a special election to be held on the 29th day of June, 1943?" That question should be answered in the negative.

The judgment appealed from should be affirmed with costs.

LEHMAN, Ch. J., LOUGHRAN, DESMOND and THACHER, JJ., concur with LEWIS, J. CONWAY, J., dissents in opinion in which RIPPEY, J., concurs.

Judgment reversed, etc.