Irving II. Saypol, J.
The plaintiff, suing as a taxpayer of the City of New York, pursuant to section 51 of the G-eneral Municipal Law brings this action for a declaratory judgment that chapter 87 of the Laws of 1961, adding a new subdivision 4 to section 20 of the City Home Rule Law and amending subdivision 3 of section 20, is void and unconstitutional and is inapplicable and not binding upon the defendants nor as to the existing charter, ordinances and laws of the City of New York, and to enjoin the defendants from incurring any liability which may be a charge against defendant City of New York or from using any of its funds or from acting in furtherance of the purposes of the new law.
The plaintiff asks for a temporary injunction during the pendency of the action.
The answering defendants oppose the motion and cross-move for dismissal of the complaint for legal insufficiency or summary judgment on the pleadings declaring the challenged legislation constitutional.
The plaintiff has standing to sue. It is held that chapter 87 of the Laws of 1961 is valid insofar as it authorizes the alternative method of naming a charter commission by any of the Mayors of the 62 cities of the State. Controlling precedential authority impels that conclusion on the premise that the law at least in its terms is general in application to all the cities of the State and because no showing has been made that in application its effect is not alike as to the charters of all the cities of the State. On the same basis of controlling precedent, the *382 court will not strike down those provisions which invest the Mayors with powers of appropriation of city funds for the use of the Mayor’s commission, after 30 days of inaction by the appropriate officials of the city. The withdrawal of such a request under the law together with the declaration of partial validity (supra), results in a denial of the plaintiff’s motion for a temporary injunction. The defendants’ alternative cross motions to dismiss the complaint or for summary judgment are denied, on the holding that the provisions of newly enacted paragraph (e) of subdivision 4 and the newly added language at the foot of existing subdivision 3 are invalid as an improper delegation of legislative power, for both constitutional and statutory offense. The offending provisions, particularly the first, present a startling innovation with a consequential and inadmissible effect. The newly enacted authorization to a mayor to appoint a charter commission would empower such an official, by the mere stroke of a pen in appointing the commission, completely to nullify and sterilize the usual law-making powers under existing law, State or local, as to any charter change, of any kind, small or large. Immediately upon appointment of a mayor’s new charter commission, all other alternative charter-making processes are stayed. The local legislature is forbidden to legislate in respect to "charter amendment and no other proposal under any other provision of law may be submitted for the vote of the People. No controlling authority or guide for this unusual exclusion is shown. If the mayors of cities are to be endowed with superior, in fact exclusive control of local lawmaking, it should be plainly and clearly and unequivocally expressed and there should be no repealer by implication.
The gravamen of the complaint is that the challenged statute, while speaking as a general law applicable to all cities in the State, is in fact a local and special law designed solely for the purposes of the Mayor of the City of New York. As such, it is pleaded, the request of the Mayor, concurred in by the New York City Council, or a declaration of necessity by two thirds of the elected members of the Council alone, in which event a two-thirds vote of the State Legislature would be required, was necessary for its validity (N. Y. Const., art. IX, § 11).
It is further alleged that on February 14, 1961, a bill was introduced in the City Council, providing for the creation of a New York City Charter Commission, pursuant to the provisions of section 20 of the City Home Rule Law as it then read, before chapter 87 became a law; that on April 5,1961, the Mayor of the City of New York issued a call for a special meeting of the *383 Board of Estimate to consider a request from the charter revision commission for an appropriation of $50,000.
Constitutional invalidity of the new law, wholly or partially, is predicated upon alleged violation of sections 8, 11 and 12 of article IX, and section 1 of article III of the State Constitution, and the Fourteenth Amendment to the Federal Constitution.
The answer, in addition to various general denials, alleges inter alla that chapter 87, as a general law applying in terms and in effect to all cities alike, is constitutional; that the plaintiff has no standing to sue for a declaratory judgment; that there is no waste of city property; that the action is premature, and that the plaintiff is seeking to restrain legislative action.
In an affidavit by the Deputy Mayor of the City of New York, in opposition to the motion for a temporary injunction, he states that three other cities are proceeding under chapter 87. It is further stated that the Mayor of New York City has withdrawn from the calendar of the Board of Estimate his request for a $50,000 appropriation for his charter revision commission.
At the outset, the defendants urge that since the Mayor of this city has withdrawn the request for an appropriation, the plaintiff has no standing to challenge the legislation under section 51 of the General Municipal Law, since no use of municipal funds is contemplated, and so the present suit is premature because'possible waste is not shown.
Apart from the fact that there is no assurance that funds will not hereafter be sought by the commission, because the new law provides, inter alla, that members of the commission shall be reimbursed for the actual or necessary expenses incurred by them in the performance of their duties and also provides for compensation of employees and consultants, the court accepts that it is in the public interest now to decide .the issues on the merits. Clearly, should the Mayor’s commission file a proposed new charter for submission to the electorate, a suit to restrain such submission would then be maintainable (see Matter of Mooney v. Cohen, 272 N. Y. 33), and it is deemed better to clarify the matter at once.
Consideration will be facilitated by a discussion of background, constitutional, statutory and decisional. Home rule as a synonym for autonomy for local governments has become an historical cliché. The essential question is, to what extent shall the people of a particular locality be permitted to rule themselves? It has been agitated, it has raged, sometimes partially settled, since the American Revolution (11 New York State Constitutional Convention Committee, Problems Relating to Home Rule and Local Government, 1938, pp. 1-2).
*384 “ Legal tradition vests in the State complete control over its municipalities. Subject only to the provisions of the Federal Constitution, the State may create a local unit or destroy it, give powers to it or take them away. The only limitation which may he put on this power of life and death is by the people of the entire State by constitutional specification ” (op. ait., p. 2).
Ensuing events, at the Constitutional Convention of 1938 and currently, demonstrate how disturbed and how muddied the waters remain. At the 1938 convention, discussion of home rule by the delegates was extensive and diverse. The present Presiding Justice of the Appellate Division, Third Department, Hon. Francis Bergan, a delegate at the 1938 Convention, is quoted. The discussion deals with amendment of article XII of the Constitution of 1894, as last amended in 1923, the then effective home rule provision in the Constitution.
Speaking on the question of the provision with respect to the property, government and affairs of cities (the phrase a hoary cliché in its own right), of the restrictions on the Legislature as to the property, affairs and government of cities without a correlative grant of power to the cities, he recommended speaking in plain language. ‘ ‘ But ’ ’, he continued, ‘ ‘ that task has been so difficult and the experts have so floundered around in the attempt at its solution that after a period of. two months we have come to the conclusion, all of us who have studied the problem, that apparently it is insoluble, at least insoluble for us.” (2 N. Y. State Constitutional Convention, 1938, Revised Record, p. 1363.) No one who heard Judge Bergan 23 years ago would consider him a tyro or a neophyte in this or any other branch of law. Contemporaneously, we still find him involved as a colleague and vice-chairman with another distinguished jurist, former Presiding Justice David W. Peck, chairman of the late and much-lamented Temporary Commission on the Revision and Simplification of the Constitution. In the report dated December 31, 1959, of its Subcommittee on Local Government, which was headed by Judge Bergan, entitled “ A New Local Governments Article ”, the subject is introduced as follows (Legis. Doc. [1959], No. 58, footnotes not quoted), page 15:
“ These requirements for a new Local Q-ovemments Article are confirmed by the criticisms of the existing Article IX that were voiced at hearings held by the Constitutional Convention Commission in 1957. In reporting on the constitutional issues facing New York State in 1957, that Commission noted that ‘ more attention was given by spokesmen at the hearings to constitutional issues relating to local governments and state-local relations than to any other subject. * * * In sum, the comments and suggestions called for a broad re-examinatian of the constitutional basis of local government and state-local relations,’
*385 “ The dissatisfaction with the existing Article is witnessed by snch statements as the following made to the Commission. The Mayor of the City of New York said: ‘" *' * Constitutional home rule provisions have been so whittled away that practically nothing remains of them but the neglected and ignored printed words.’ The New York State Conference of Mayors observed that ‘ those persons most acquainted with home rule will agree on one fact relating to home rule and that is that they cannot understand what it means in the Constitution, or by reading the Court cases relating to home rule.’ The Dean of the University of Buffalo Law School called for ‘ a fresh look at the problem of defining home rule powers.’ The County Officers Association urged that the Constitution should vest counties with ‘ the broadest home rule powers consistent with our legal concepts.’ ”
£ »
At page 18:
“ The history of New York exhibits a strong state government on one hand and, on the other, a tenaciously held local sense of responsibility for government and for ‘home rule’.”
# * e
“ The formula, the magic words ‘ property, affairs or government ’, failed in the tests of interpretation and application in practice, and the failure was not mitigated by the heralded ‘home rule’ amendment of 1924 prohibiting the Legislature from passing any law ‘ relating to property, affairs or government of cities ’ which ‘ shall be special or local in its terms or in its effect ’ except on message from the Governor and a two-thirds majority of both houses of the Legislature. What was ‘ special or local ’ in ‘ terms ’ or ‘ effect ’ and what was of ‘ State concern ’ proved to be too uncertain and indefinite to avoid controversy and litigation.”
Following are the pertinent provisions of the Constitution now in effect (art. IX, § 11):
“The legislature shall act in relation to the property, affairs or government of any city only by general law# which shall in terms and in effect apply alike to all cities, except upon the request of the mayor of the city affected concurred in by the local legislative body or upon the request of two-thirds of the elected members of the local legislative body declaring that a necessity exists and reciting the facts establishing such necessity and the concurrent action of two-thirds of the members of each house of the legislature. The legislature may by general laws confer on cities such powers of local legislation and administration in addition to the powers vested in cities by this article as it may, from time to time, deem expedient and may withdraw such powers. The provisions of this article shall not be deemed to restrict the power of the legislature to enact laws relating to matters other than the property, affairs or government of cities.” (Formerly art. XII, § 2; renumbered and amended by Constitutional Convention of 1938; approved by the People Nov. 8, 1938.)
* * -Se
Sections 12 of article IX :
“ Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the state relating to its property, affairs or government. Every city shall also have the power to adopt and amend local laws not inconsistent with this constitution and laws of the state, and whether or not such local laws relate to its property, affairs or government, in respect *386 to the following subjects: the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all its officers and employees except of members of the governing elective body of the county in which such city is wholly contained, the membership and constitution of its local legislative body, the transaction of its business, the incurring of its obligation, * * * ”.
Provision for legislation by local legislatures of cities has been in the law since 1924 (City Home Rule Law, L. 1924, ch. 363, art. I. Short Title, Definitions [§§ 1-2], art. II. Local Legislation [§§ 10-22], art. III. Legislative Intent; Construction; Taking Effect [§§ 30-38]). In 1939, the law was amended and re-enacted (L. 1939, ch. 867) following the adoption of the Constitution of 1938 and reflecting in the amended statute the home rule provisions of the new Constitution which are quoted (supra). Since 1938, local legislation, controlled by the requirement for referenda in certain instances, was authorized by the New York City Charter, a State law too — by the Council in New York City. As the City Home Rule Law reads today, section 15, after providing for submission at a special or general election, the latter determinable by the Council or controllable by the People on petition, requires a referendum (§ 15, subd. 10) if the local law provides a new charter. Section 19-a was added by the 1939 amendment, authorizing amendment of a city charter by petition and referendum—a people’s charter. Thus, for the first time, there is found authorization for both direct and representative legislation. That section was considerably enlarged in scope and effect (L. 1957, ch. 1027) to clarify and to overcome the effect of restrictive decisions (see explanatory footnotes, McKinney’s Cons. Laws of N. Y., Home Rule Law, Supp. 1960, at the foot of § 19-a).
Subdivision 1 of section 20 opens by referring to the other provisions of the City Home Rule Law authorizing local legislation regarding charter amendment, and goes on to authorize the creation of a charter commission and, as amended by chapter 195 of the Laws of 1958, the local legislature may do so, alternatively, by submitting to a referendum either the question of whether or not there shall be a charter commission or, alternatively, providing for such a commission. Subdivision 2 of section 20 of the City Home Rule Law authorizes similar procedure for a charter commission by direct action on petition. Subdivision 3 of section 20 of the City Home Rule Law prescribes the procedure for a charter commission created pursuant to this section, including provision for submission of the proposed charter to a referendum, leaving it to the local legislature to say whether it shall be so submitted at a special city election or at a general election.
*387 The New York City Charter, effective January 1,1938, sections 21 to 45 names the Council as the legislative body of the city, prescribes its powers and procedure for passage of laws, including approval by the Mayor. Additionally, enumerated charter provisions require the concurrence of the Board of Estimate. This includes a proposal which amends or repeals a provision of the charter. Furthermore, a mandatory reference is directed if the bill provides a new charter for the city (§ 40, subd. 10). Section 44 provides an alternative method for amendment of the charter by the Council or upon petition and referendum in respect to voting for, creation of, or abolition of its elected officers. It is apparent that the Legislature, in the spirit of home rule in the New York City Charter has provided various methods for making laws in the City of New York, including action by the Council and the People on petition. Invariably, when a new charter is involved, it is subject to submission to a referendum of the People. If the Council acts under the character to create a new charter, the Board of Estimate must concur. This is not so under the Home Rule Law.
Article III contains the following illuminative provisions:
“article iii —legislative intent; construction; taking eeeect
“ § 30. Legislative intent. It is the intention of the legislature by this chapter to provide for carrying into effect provisions of article nine of the constitution and hereby to enable cities to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to cities .by the terms and spirit of such article. It is not the intention of the legislature hereby to abolish or curtail any powers or rights heretofore conferred upon or delegated to a city or cities or to any board, body or officer thereof, unless a contrary intention is clearly manifest from the express provisions of this chapter or by necessary intendment therefrom; nor to restrict the powers of the legislature to pass laws regulating matters of state concern as distinguished from matters relating to the property, affairs or government of cities.
“ § 31. Construction. This chapter shall be construed liberally. The powers herein granted shall be in addition to all other powers granted to cities by other provisions of law. A permissive procedure authorized by this chapter shall not be deemed to be exclusive or to prohibit the use of any other procedure authorized by any act of the legislature, city charter or local law lawfully adopted but shall be deemed an alternative thereto.
* * #
“ § 33. No repeal by implication. It is not intended by this chapter to repéal by implication any existing provision of law and no law shall be deemed repealed thereby unless expressly provided for herein.
“ § 34. Enumeration of powers not restrictive. The enumeration of specific powers by this chapter shall not operate to restrict the meaning of a general grant of power contained in this chapter, or to exclude other powers comprehended in such general grant.
“ § 35. Effect of unconstitutionality in part. If any clause, sentence, paragraph, section or part of this chapter shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or *388 invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment shall have been rendered.”
The Court of Appeals has held that these various procedures are alternative, not exclusive, in the following language (Loening v. Seaman, 290 N. Y. 527, 531):
“We do not think that the procedure outlined in section 20, subdivision 3, of the City Home Rule Law, upon which the defendants rely, is exclusive. The Legislature indicated its intention to be otherwise when, by section 31 of the same chapter, it provided: ‘ A permissive procedure authorized by this chapter shall not be deemed to be exclusive or to prohibit the use of any other procedure authorized by any act of the legislature, city charter or local law lawfully adopted but shall be deemed an alternative thereto-’ ”
To the same effect is the decision of Mr. Justice Ferdinand Pécora holding that the enactment by the Legislature of section 19-a of the City Home Eule Law (amendment of the charter by petition) did not effect the repeal of section 44 of the New York City Charter, since these were alternative, not exclusive, procedures (Matter of Albert v. Kern, 177 Misc. 852, 854-856, revd. 263 App. Div. 48, which in turn was reversed, 287 N. Y. 666, affg. Special Term on the authority of Burke v. Kern, 287 N. Y. 203).
The following excerpt from Judge Pécora’s opinion is helpful (pp. 854-856):
“ The charter of the city of New York took effect on January 1, 1938, after it had been approved by the people at a general election held in November, 1936. It is urged by petitioner that section 19-a of the City Home Rule Law provides the only or exclusive method for amending the charter by petition and that its provisions supersede the requirements of section 44 of the charter.
“It is clear that the enactment and amendment of section 19-a did not expressly repeal section 44 of the charter. However, section 36 of the City Home Rule Law, as amended by chapter 867 of the Laws of 1939, provides: ‘ All existing charters, local laws and other laws, so far as not inconsistent with this chapter, shall continue in force until lawfully repealed, amended, modified or superseded.’ (Italics supplied.)
“ Section 30 of the same law provides: ‘ It is not the intention of the Legislature hereby to abolish or curtail any powers or rights heretofore conferred upon or delegated to a city or cities or to any board, body or officer thereof, unless a contrary intention is clearly manifest from the express provisions of this chapter or by necessary intendment therefrom; * * *.’ (Italics supplied.)
“ Moreover, section 33 of that law provides that ‘ It is not intended by this chapter to repeal by implication any existing provision of law and no law shall be deemed repealed thereby unless expressly provided for herein.’
“ I hold that it was not the intention of the Legislature to repeal setion 44 of the charter when section 19-a of the City Home Rule Law was enacted and amended. The two statutes can be harmonized. One applies solely to this city, where the initiating petition would be practically impossible of procurement were section 19-a applicable because of the very large vote usually cast here in a gubernatorial election. As for other cities in the State, the require *389 ments of section 19-a would in all instances be less than the 50,000-signature provision of section 44 of the charter.
“ The general rules of statutory construction support the conclusion that there was no repeal of section 44 of the charter by section 19-a of the City Home Rule Law. Repeals by implication should not be favored unless the statutes involved are in such conflict that both cannot be given effect. As has already been demonstrated, the statutes here at issue can be harmonized because they apply to different types of cities. Furthermore, it has been frequently held that a special statute is not repealed by a general statute unless there is a clear intention to effect that result. Section 44 of the charter is a special statute applicable solely to the city of New York, while section 19-a of the City Home Rule Law is a general statute which applies generally to cities throughout the State.
“ The terms of the general statute would control only in a city which lacked a charter provision or other special law covering the subject.
“ The contention of the petitioner that Proposition No. 1 should have been submitted in accordance with the provisions of section 19-a of the City Home Rule Law, instead of those of section 44 and section 45 of the charter, cannot be upheld. There was no express repeal of those charter provisions by section 19-a, nor do I find any intent on the part of the Legislature to repeal them by implication or by necessary intendment.
“ In addition to the principles already discussed there is another ground upon which the determination arrived at may be based. Section 31 of the City Home Rule Law provides as follows: ‘ This chapter shall be construed liberally. The powers herein granted shall be in addition to all other powers granted to cities by other provisions of law. A permissive procedure authorized by this chapter shall not be deemed to be exclusive or to prohibit the use of any other procedure authorized by amy act of the Legislature, city charter or local law lawfully adopted but shall be deemed an alternative thereto.’ (Italics supplied.)
“Admittedly section 44 and section 45 of the charter were in effect when section 19-a and other sections of the City Home Rule Law were amended by chapter 867 of the Laws of 1939. Following, therefore, the rule of construction specifically laid down in section 31 of the City Home Rule Law, it is clear that the amended section 19-a of that law merely prescribed an additional, permissive and alternative procedure to that already provided for in the charter.”
The main impact of chapter 87 of the Laws of 1961, by adding subdivision 4 (pars. [a]-[f ]) is to authorize an additional method for the adoption of a new charter by the cities of the State. It is at once apparent from paragraph (a) of subdivision 4 that the new method instead of being complementary, is potentially, in fact, actually, an exclusive method, because it is stated that the procedure under this subdivision shall be controlling, notwithstanding any provision in section 20 of the City Home Buie Law. According to paragraph (b) of subdivision 4 the mayor of any city in any calendar year not less than six months prior to the general election in that calendar year shall have power to appoint a city charter revision commission pursuant to this subdivision to prepare a proposed new city charter for submission to the qualified electors of the city pursuant to this subdivision. Paragraphs (c) and (d) of subdivision 4 provide for *390 filing the proposed new mayor’s city charter at least 90 days prior to the next general election following the appointment of the commission and for the submission of the question for the adoption of that charter. Paragraph (e) of subdivision 4, the questionable and objectionable part of the new law, is as follows:
“ Notwithstanding the provisions of any general, special or local law, ordinance or city charter, if the [mayor’s] city charter revision commission shall file, pursuant to paragraph (c) of this subdivision, a proposed new city charter, no question pursuant to any local law, ordinance, resolution or petition may be submitted to or voted upon by the qualified electors of such city between such date of filing and the day following the next general election occurring after such date of filing, if such question involves or relates directly or indirectly to the adoption of a new city charter, the amendment (however extensively) of a city charter, charter revision, the establishment of a commission to draft a new city charter or the functions, powers or duties of any elective officer of the city, except the question submitted pursuant to paragraph (d) of this subdivision, nor shall the local legislative body of the city, between the date of filing of the certificate of appointment by the mayor pursuant to paragraph (b) of this subdivision and such day following such general election, adopt a local law establishing a commission to draft a new city charter or amending, revising or changing the existing city charter.”
Subdivision. 3 of section 20 of the City Home Rule Law, is amended by striking the provision limiting submission at a special election to the single question on the charter prepared under section 20 either by the local legislative body or by direct action, although there is retained in this subdivision the power in the local legislature to say whether the question should be voted upon at a special or general election. However, language is added at the foot which gives a proposed charter of the local legislature a pre-emptive role secondary to that given to the mayor’s charter which is stated in paragraph (e) of subdivision 4. As a matter of law, the effect of the new subdivision is contrary to the decisions (Loening v. Seaman, 290 N. Y. 527, supra; Matter of Albert v. Kern, 177 Misc. 852, revd. 263 App. Div. 48, revd. 287 N. Y. 666, supra), holding that the said provisions in the City Home Rule Law and in the New York City Charter are alternatives. The extent to which the Mayor would be granted supermacy in the field of charter amendment may be visualized by laying open the pertinent home rule provisions of the Constitution, the City Home Rule Law, and the New York City Charter, Home rule contemplates local responsibility for matters such as that of self-government, its form and its operation. Realistically, the resort to the Legislature shall be under the most unusual circumstances, either upon concurrent action of Mayor and local legislature, or justifiable demonstration for the need by two thirds of the local legislature, approved by two *391 thirds of the State Legislature. Both the City Home Buie Law and the New York City Charter provide for competing alternatives by local legislature or by direct action. At the very outset, on January 1 in any calendar year the Mayor, by appointing a new charter commission, would oust both the local legislature and the People from participation of any kind in the field. This is perforce so because of the provisions of paragraphs (a) and (e) of subdivision 4. The local legislature and the People otherwise authorized to act under subdivisions 1 and 2 of section 20 of the City Home Buie Law would be “ stopped in their tracks,” respectively. Under paragraph (e) of subdivision 4, notwithstanding any other law or city charter, upon the filing by the Mayor’s commission of its proposal at least 90 days prior to the general election, no question pursuant to any local law, ordinance, resolution, or petition may be put before the voters until after the election if such question involves in any way the charter—either new charter, amendment of the charter, etc. Under the New York City Charter any local law addressed to a new charter or to an amendment of the charter needs the concurrence of the Board of Estimate and the approval of the People at a referendum. Thus the local legislative body—the Council, together with the Board of Estimate and the People, legislating directly, are debarred. The local legislative body of the city is made impotent, and enervated and stultified and it is barred from the appointment of the new charter commission— in our case January 1 until after the general election-—insofar as it may adopt the local law establishing a commission to draft a new city charter or amending, revising, or changing the existing city charter. Assuming an assumption of such power in the interval after the general election—November to December, or two months—by the local legislature, its efforts and those initiated by direct action would nevertheless become ineffectual, if not completely mooted, by recurrent action appointing a Mayor’s charter commission on January 1 because at once alternative activities would be rendered uncertain and inconclusive in the event that the Mayor’s commission should file its charter for the alternative proposals would be barred from the ballot at the general election.
To the same but with secondary effect, the intermediate delegation to the local legislature, by the new language at the foot of subdivision 3, absent a mayor’s charter commission preempting the field to the exclusion of direct action, is tainted with the same objectionable defects as have been demonstrated regarding paragraph (e) of subdivision 4.
*392 The following relevant principles have been established in the decisions of our Court of Appeals: The principle of the separation of powers does not apply to the government of cities (Matter of La Guardia v. Smith, 288 N. Y. 1, 6-7). A local law may be enacted by other than the local legislative body (Burke v. Kern, 287 N. Y. 203, 212). It has already been shown (supra) that the procedure outlined under subdivision 3 of section 20 of the City Home Rule Law is not exclusive, especially in light of section 31 of such law (Loening v. Seaman, 290 N. Y. 527, 531-532). The Legislature may confer upon others, such as administrative officers, boards, and judges, authority to fix the compensation of their employees (Matter of Rosenthal v. McGoldrick, 280 N. Y. 11, 13). The motives of the Legislature are beyond the pale of judicial inquiry (People v. Draper, 15 N. Y. 532, 545, 555; Matter of New York El. R. R. Co., 70 N. Y. 327, 351), except perhaps when evident in the statute itself (Kittinger v. Buffalo Traction Co., 160 N. Y. 377, 397). In Matter of Bergerman v. Gerosa (208 Misc. 477, affd. 2 A D 2d 659, affd. 3 N Y 2d 855) where it was urged, as here, that the challenged statute was a special act applicable to the City of New York and that it was not passed in the manner required for such local legislation, my colleague, now Associate Justice of the Appellate Division, Aron Stetter, said (p. 480):
“ As to the third specification it is claimed that the statute violates the home rule provisions of the Constitution (art. IX, § 11). On its face it does not. The court is however urged to look beyond the statute and to take judicial notice that the inclusion of all the cities of the State was merely to afford an easy passage for the law. Perhaps so. But this is no reason for a finding of uneonstitutionality. In terms and effect the law applies to all cities. It may be that the sole claimants are within the city of New York. But it is by no means certain that this is so. To establish that an act though general in terms is local, it must be shown that physical facts or circumstances would limit the act to certain cities.”
The fact that cities other than New York City appear to be availing themselves of the provisions of chapter 87 would seem to negate the claim that it is strictly local legislation (cf. Matter of Mayor, etc., of New York [Elm St.], 246 N. Y. 72, 78).
With the foregoing background of principles from decisions, Matter of Mooney v. Cohen (272 N. Y. 33, supra), is the bulwark of the defendants’ reliance. In Mooney, the plaintiff sought to restrain the defendants from submitting to the electors of the City of New York, at the general election to be held on November 3, 1936, the question of the adoption of the charter proposed by Mayor La Guardia’s New York City Charter Revision Commission. In 1934, the Legislature, acting pursuant to section 2 of *393 article XII of the State Constitution (since amended and renumbered in 1938 as present section 11 of article IX), on emergency message of the Governor and by two-thirds vote, enacted chapter 689 of the Laws of 1934, effective May 21, 1934. Thereby the Legislature created its own New York City charter commission, naming 28 members headed by the late Governor Alfred E. Smith. Three months later, on August 15, 1934, pursuant to the same emergency procedure message chapter 867 of the Laws of 1934 was enacted, repealing the former law, creating by the Legislature another New York City charter revision commission of nine members to be appointed by the Mayor of New York City. That statute was challenged on the ground that section 20 of the City Home Rule Law was enacted pursuant to the mandate of the city home rule amendment. Thereunder, the local legislative body of the City of New York is authorized to submit a new charter to the voters, and the State Legislature thereby was excluded and was without authority to act. Paraphrased, under the principle of home rule, the delegation to the local legislature divested the State Legislature in the premises. In overruling the contention and sustaining the validity of chapter 867 of the Laws of 1934 Chief Judge Crane, for a unanimous court, stated in Matter of Mooney v. Cohen (272 N. Y. 33, 39):
“ The respondent overlooks the power which is reserved to the Legislature over cities. By a general law or by an emergency local law, the Legislature can change the agency for the submission of a city charter from the legislative body to a commission. The Constitution of the State provides that the legislative power of the State shall rest in the Senate and Assembly. There is no constitutional provision that the legislative body for passing ordinances or laws of a city shall rest in an assembly or a board of aldermen or any other body, and we find no such provision in the Home Rule Amendment. Section 3 of article XII gives to every city the power to adopt and amend local laws, not inconsistent with the Constitution and laws of the State, relating to many matters which are therein considered to be the property, affairs or government of the city. No limitation is here found upon the method by which these local laws shall be adopted, and no replica of the State Senate and Assembly is necessary.
“ The city, therefore, having the power — and it is conceded — to amend the charter, the Legislature of the State could designate the agency to exercise the-power. This it has done by the law in question (L. 1934, ch. 867, amd. L. 1935, eh. 292) authorizing the Mayor to appoint a commission to revise the charter instead of having it done under the Home Rule Law, section 20, by the local legislative body.”
Thus, the court declared (supra), the controlling principle that “ [b]y a general law or by an emergency local law, the Legislature can change the agency for the submission of a city charter from the legislative body to a commission ’ ’ .
*394 True it is that when Mooney was decided, the emergency message of necessity for local legislation emanated from the Governor (art. XII, § 2), while today it must be “ upon the request of the mayor of the city affected concurred in by the local legislative body or upon the request of two-thirds of the elected members of the local legislative body declaring that a necessity exists and reciting the facts establishing such necessity ’ ’ (art. IX, § 11). But where, as here, a general law is involved, the court must accept that the noted changes, as regards local and special legislation effected by the 1938 constitutional revisions, are immaterial. In other words, a general law today must be held to be valid because the Court of Appeals in 1936 said it would then have been so. That is so, notwithstanding changes in the method of effecting emergency local laws. The rationale of Mooney controls as to the validity of the new method of appointment by a mayor of a new city charter commission, additional to the existing alternatives of action by a local legislative body together with approval or referendum or by direct action alone. This conclusion is not affected by the suggested distinction between the present case and that in Mooney (supra). There, as has been shown, the Legislature authorized the commission but delegated the appointment of its members to the Mayor. Here the Legislature validly says the Mayor shall be the agency for the determination that there shall be such a procedure with the incidental power of the appointment of its members. Other arguments against the validity of the delegation are deemed insubstantial.
It may be accepted on the foregoing reasoning that it was within the competence of the Legislature, acting generally, to change the whole pattern in section 20 of the City Home Buie Law, to subordinate powers of local legislature or People to the newly created powers delegated to mayors.
When the tremendous impact in nullification by the indirect operation of paragraph (e') of subdivision 4 is envisioned, conclusion is inescapable that it violates every concept of home rule. The argument is made that keeping competing propositions off the ballot will avoid confusion to the electorate. No precedent is shown for such an emasculatory device, which would operate practically against the presently authorized local procedures which are found in the New York City Charter, for example. Though valid, perhaps in respect to the City Home Buie Law, it may not be so held as to the New York City Charter. The defendants cite Tanner v. Vogel (261 S. W. 2d 671 [Ky.]) a case in which the Court of Appeals of Kentucky affirmed denial *395 of mandamus against a County Judge acting as an election official. The Judge had refused to put competing proposals regarding local government of the City of Henderson, Kentucky, on the ballot. Examination of the opinion and the cited statute (Ky. Rev. Stats., § 89.290, subd. [1], § 89.290, subd. [4], and § 89.410, subd. [2]) shows that there is no relevance, nor is American Jurisprudence (18 Am. Jur., Elections, §§ 180, 182, 326, 327) which are cited at the foot of the opinion of the court, in any way relevant to the subject. Sections 79 and 82, Elections, of volume 29 of Corpus Juris Secundum are cited also at the foot of the opinion and by counsel. The latter states the proposition that when an election is held for a specified purpose it is valid to exclude all but the proposition to be voted upon at such a special election. With that no fault can be found, but that is exactly the opposite of what this law does in providing for submission of a new charter at a general election, embroiling it in the political controversies of competing candidacies for public office. It should be noted that the local legislative choice of a special election in section 16 and subdivision 3 of section 20 of the City Home Rule Law, remain unchanged. Section 19-a of the City Home Rule Law has not been repealed, nor have the provisions of the New Lork City Charter. If anything, according to the introduction to the bill amending section 19-a, there is a clear demonstration of a legislative intent to extend rather than to limit the application or the operation for charter revision by direct action. Furthermore, Governor Harriman’s memorandum in approving the bill (N. Y. State Legis. Annual [1957], pp. 540-541) stated: “ This bill clarifies and broadens the scope of Section 19-a so that it applies to the adoption of new charters as well.” This bill “will benefit the people of New York City primarily; it makes the method of charter petition more available there ”. The new restrictive provisions of paragraph (e) of subdivision 4 and subdivision 3 of section 20 of the City Home Rule Law, choking off, as it were, alternative action by local legislature and People, operating as they do against the other provisions of the City Home Rule Law and the New York City Charter, are furthermore deemed invalid as an indirect delegation of legislative power violative of section 1 of article III of the Constitution, and of the home rule policy of the State reflected by sections 'll and 12 of article XI of the Constitution, and section 30 of the City Home Rule Law, curtailing indirectly legally delegated powers of the local legislative body and of the People, and the aforesaid provisions are further declared violative of section 33 of the City Home Rule Law in that the *396 effect of a mayor’s appointment of a new charter commission would operate as a repeal by implication of the other provisions of law, New York City Charter and City Home Rule Law.
In summary, the 1938 amendment of the home rule article of the Constitution, in sections 11 and 12 of article IX, withdrew the power of the Legislature to initiate special local legislation affecting the property, affairs, and government of cities and left it exclusively to each city. The Legislature generally can add to existing powers, such as here, providing an additional method of initiating charter revision by the mayors. But the Legislature’s former powers of destruction of cities as complementary to their powers of creation, seem to have been limited, for, under the second sentence of section 11 of article IX of the Constitution it can only withdraw those additional powers which in the first instance it may have granted. There would be here such an attempted withdrawal of local powers which are granted by section 12 of article IX operative indirectly upon the Mayor’s act in appointing a charter commission. Not only would local legislation and also action under section 19-a of the City Home Rule Law be foreclosed, but under the provisions of paragraph (e) of subdivision 4 of section 20 of the City Home Rule Law, the Council could pass no resolution as authorized in section 11 of article IX of the Constitution as an appeal to the Legislature for a special act addressed to the instant situation or to any other local problem requiring a local law from the Legislature.