HON. JAMES E. ROGERS City Attorney, North Tonawanda
We acknowledge receipt of your letter stating that there is now a charter commission in existence in your city and inquiring whether the last date to present any proposed, revised or new charter to the electorate of the city will be on or before the date of the general election in 1977 or on or before the date of the general election in 1978.
We assume that the charter commission was created pursuant to Municipal Home Rule Law § 36, subdivision 4 and as a consequence, all members of the commission had to be appointed by the city mayor.
You recite the following schedule of events:
 On June 10, 1976, the mayor appointed five members of the commission.
 In early autumn of 1976, the mayor appointed six members of the commission.
 An "introductory" meeting of the commission was held on October 12, 1976.
The general election was held on November 2, 1976.
 The "first preliminary meeting" of the commission was held on November 3, 1976.
 On December 8, 1976, the city clerk took and filed the official oaths of office of the 11 members of the commission.
Municipal Home Rule Law § 36, subdivision 5, paragraph b provides that the new charter or amendments prepared by the commission shall be completed and filed in the office of the city clerk in time for submission to the electors "not later than the second general election after the charter commission is created and organized". (Emphasis supplied.) It is this provision relating to the submission of the work product of the charter commission in combination with the above recited schedule of events which gives rise to your question of whether the submission shall be on or before the general election in 1977 or 1978.
For the reasons which will hereafter appear, it is our opinion that the work product of the charter commission must be presented to the electorate of the city on or before the general election to be held in 1978.
In order to answer your question, it is necessary to determine when the charter commission was "organized".
The members of a city charter commission are city officers: they perform a legislative function (Matter of Mooney v. Cohen, 272 N.Y. 33 [1936]); the commission determines policy questions such as whether its its work product should be submitted at a general or special election (Loening v.Seaman, 290 N.Y. 527 [1943]); the commission exercises a portion of the sovereign power of the State as can be seen from an examination of their duties as set forth in Municipal Home Rule Law § 36 and as is emphasized by the fact that certain normal legislative processes of a city are inhibited during the life of the commission by subdivision 5, paragraphs e, f and g, and that it has the power to subpoena witnesses and require the production of books, papers and records under subdivision 6, paragraph f; and subdivision 6, paragraph e speaks of terms of office of the members of the commission.
The latest date upon which the city charter commission can be deemed to have been created was June 10, 1976, when the mayor appointed 5 out of the 11 commission members but the measure for determining when the work product of the commission must be submitted is from the date of creationand organization of the commission and on June 10, 1976, the commission was not yet organized.
The terms of office of the commission members are not fixed as to time of commencement and there is no fixed termination date but here is a maximum limitation upon the terms by Municipal Home Rule Law § 36, subdivision 6, paragraph e which provides that they expire on the day of the election at which the work product is submitted to the qualified electors of the city or on the day of the second general election "following the organization" of the commission if no such questions have been submitted by that time. The terms of office, not being fixed as to time of commencement, could not commence until at least a quorum of the commission members had taken and filed their oaths of office because no official action could be taken by the commission until that event. The constitutional oaths of office were taken and filed on December 8, 1976.
In our opinion, December 8, 1976, is the date upon which the charter commission "organized" and as a consequence the work product of the charter commission must be submitted to the electorate of the city on or before the date of the general election in 1978.
We are not aware of any other city office to which the conclusion reached herein applies. This opinion is based upon the appointive nature of the offices and the indeterminate time of commencement and, consequently, of termination of the term of office. We specifically point out that it does not apply to those cases in which all or some of the commission members may be elective; as to them, the date of election and commencement and expiration of terms is fixed by the New York Constitution Article XIII, § 8.
The positions of City Personnel Officer and Affirmative Action Program Administrator for the City of Geneva are compatible and may be held simultaneously by the same person.
Dated: April 8, 1976
HON. DAVID N. COHEN City Attorney, Geneva
This is in response to your recent request for an opinion of the Attorney General as to whether or not there is a conflict of interest for the City Personnel Officer for the City of Geneva to also serve as the Affirmative Action Program Administrator.
This discussion is based upon the assumption that the City of Geneva does not prohibit a part-time City Personnel Officer from simultaneously holding another city office. Furthermore, we assume that the grant received by the City under the Community Development Block Grant Program does not prohibit the Affirmative Action Program Administrator from simultaneously holding another public office.
We find no provision in the General Municipal Law or any other statute which would prohibit a person from simultaneously holding the positions of City Personnel Officer and Affirmative Action Program Administrator. However, an incompatibility in the holding of two offices may also exist under the common law. In the case of People ex rel. Ryan v. Green (58 N.Y. 295 [1874]), the Court of Appeals stated in part:
 "Incompatibility between two offices, is an inconsistency in the functions of the two; as judge and clerk of the same court — officer who presents his personal account subject to audit, and officer whose duty it is to audit it. * * * Where one office is not subordinate to the other, nor the relations of the one to the other such as are inconsistent and repugnant, there is not that incompatibility from which the law declares that the acceptance of the one is the vacation of the other. The force of the word, in its application to this matter is, that from the nature and relations to each other, of the two places, they ought not to be held by the same person, from the contrariety and antagonism which would result in the attempt by one person to faithfully and impartially discharge the duties of one, toward the incumbent of the other. * * * The offices must subordinate, one to the other, and they must, per se, have the right to interfere, one with the other, before they are incompatible at common law."
The City Personnel Officer has general control and supervision of the hiring and firing practices for all city employees. The Affirmative Action Program Administrator is responsible for developing and implementing programs to promote the employment of minorities and other disadvantaged people. It does not appear that the respective duties and functions of the City Personnel Officer and the Affirmative Action Program Administrator are of such a nature that an inconsistency or incompatibility exists between the two offices. The two positions are not subordinate to one another so as to create an incompatibility at common law. Furthermore, the simultaneous holding of the two positions by one person would appear to be beneficial to the City, in that, the programs developed as Affirmative Action Program Administrator could be readily implemented and executed as City Personnel Officer.
Based on the foregoing, it is our opinion that the positions of City Personnel Officer and Affirmative Action Program Administrator are compatible and may be held simultaneously by the same person.